**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

MONICA MORILLO, an individual,

       Plaintiff,

v.

COMMERCIAL ACCEPTANCE COMPANY,
a Pennsylvania corporation,

       Defendant.
_____/

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, Monica Morillo, an individual, sues Defendant, Commercial Acceptance Company, a Pennsylvania corporation, and alleges:

***INTRODUCTION***

1. This is an action for violation of 15 U.S.C. §1692, *et seq.*, known more commonly as the "Federal Fair Debt Collection Practices Act" ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

***JURISDICTION***

2. Jurisdiction of this Court arises under 15 U.S.C §1692k and 28 U.S.C.§1337.

***ALLEGATIONS AS TO PARTIES***

3. At all times material hereto, Plaintiff, Monica Morillo ("Ms. Morillo"), was *sui juris* and a resident of Lake Worth, Palm Beach County, Florida.

4. At all times material hereto, Defendant, Commercial Acceptance Company ("Commercial Acceptance"), was a Pennsylvania corporation doing business in Palm Beach County, Florida.

1

5. At all times material hereto, Commercial Acceptance was and is engaged in the collection of consumer debts using mail and telephone communications to debtors in the State of Florida.

6. Defendant is properly subject to jurisdiction in the courts of this State pursuant to Florida Statute §48.193 by operating, conducting, engaging in, or carrying on a business in this state, committing a tortious act within the state, and/or causing injury to persons within the state arising from an act or omission by Defendant outside the state, when Defendant was engaged in debt collection activities within the state.

7. All acts and omissions of any agent, employee or representative of Defendants were committed with the express, implied, or apparent authority of Defendants or were subsequently ratified by Defendants.

## FACTUAL ALLEGATIONS

### A. *History of Collection Abuse and Harassment Practices of Commercial Acceptance*

#### 1. *Introduction*

8. In order to collect a debt, most debt collectors are limited to communicating by mail or by phone. The efficacy of such communications is problematic. With small debts, the cost of postage for repeated and potentially unopened mail is prohibitive. With the pervasiveness of "caller id," many persons refuse to answer calls from numbers associated with a debt collector or from unknown parties.

9. If a debt collector is unable to communicate with a consumer, the collector is unable to coax (or in worse case extort) payment. To overcome the problem, some law-breaking debt collectors reach out to third parties such a neighbors, friend and relatives to unwittingly aid in collections.

10. The FDCPA provides for strict limitations on such third-party communications:

> (b) Communication with third parties—Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.
>
> 15 U.S.C. § 1692c(b)

11. The provision's strict limitations on third-party contacts make it one of the FDCPA's most important protections. According to the Senate report:

> [T]his legislation adopts an extremely important protection . . . it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as loss of job.

S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.

12. Congress provided a very detailed, narrow exception to the broad general prohibition of third-party contacts in Section 1692c(b) to allow collectors to locate a debtor:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall–
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
> (2) not state that such consumer owes any debt;
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
> (4) not communicate by postcard;
> (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and
>   (6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily

ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b

13. Contacting third parties by a debt collector has a significant potential to harass and abuse consumers. After all, few persons wish to be embarrassed by having neighbors, friends and family members contacted by a debt collector.

14. Not surprisingly many debt collectors feign use of the narrow "locator" exception to harass consumers by contacting third parties in a collection industry practice known as a "block party." As one expert on debt collection testified to Congress:

> *"Each bill collector has a crisscross directory. Armed with this and the consumer's address, the phone numbers of the consumers' neighbors are at their disposal. Collectors are able to use some of their favorite tricks like the block party. A block party is where the collector contacts handfuls of neighbors close to or far away, depending how mad the collector is. Block parties are often held for consumers who hang up on bill collectors."*

> The Fair Debt Collection Practices Act: Hearing before the Subcommittee on Consumer Affairs and Coinage of the Committee on Banking, Finance, and Urban Affairs, House of Representatives, One Hundred-Second Congress, second session, September 10, 1992.

### 2. Pattern and Practice of Misconduct

15. Commercial Acceptance has acquired a reputation among consumers for abusive collection practices. Consumer complaints against Commercial Acceptance for these practices are scathing and too numerous to quote in full.

16. Consumers have registered their objections to the unlawful practice of "block parties" by Commercial Acceptance on the internet, including social media, blogs, and other forums:

<u>*Better Business Bureau (last accessed on October 4, 2021)*</u>

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

07/15/2021

Called for hospital Bills, not employed due to Covid, calling other family members looking for me which is very unprofessional and a violation of privacy .

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

05/18/2021

February 15, 2021, I received a call at 10:52am. I asked who was calling and the man on the phone refused to tell me whom he was. He asked verifying questions saying he couldnt disclose who he was until I verified. He eventually said he was a debt collector. I told him, I do not know what debt he is referring to. He continued being rude so I told him to stop calling me and send all information to the address he has. He said that he would continue calling me and all my family members. An hour later at 11:55am, my grandmother received a call from the same debt collector. He continued to contact me roughly 3-4 since that incident where I clearly said stopped calling me and send me anything through the mail. Then, I receive a final notice in the mail saying I have 5 days to respond or they will take additional action against me. They never sent me any debt notices, validation of debt, etc. in the mail prior to this final notice. This company is clearly in violations of my rights!

**Complaint Type:** Problems with Product/Service
**Status:** Answered

06/24/2020

Received a call from them today asking if I was the parent or guardian of one of my children, asking me to verify DOB, when I asked what this was in regards to she got an attitude, said it was medical and said she will file this as me not being compliant since I did not verify DOB. When I said I never said that she hung up the phone on me. Never answered my question and never gave me a chance to talk.

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

09/27/2019

9:47 am EST a phone call came in from this company asking for a certain person at my residence. I asked what the call was about and the ignorant man on the other line repeated the name again. I asked again what the call was about. He asked "if this was how I handled a phone call about personal business matters and if this was *****" he was asked whose business it was and again got ignorant on the phone. There is no one in my home that owes money to any ambulance company at all and if this is whom this company is representing then they need to stop calling. The family at this phone number has health insurance that covers those kinds of costs without any out of pocket or co pay costs.

*From Google Reviews (last accessed on October 4, 2021)*

**Jessica Torres-Soto**

11 months ago
Actively reached out to my daughter's phone number to collect on a debt that had nothing to do with her. Reaching out through googline and using my child's phone number is unacceptable.

### B. Details of Collection Abuse and Harm Experienced by Ms. Morillo

#### *1. Ambulance Bill of Ms. Morillo's Brother*

17. At some unknown time in the past, the brother of Ms. Morillo, Adlo Morillo ("Mr. Morillo") incurred an ambulance bill for transport services by the City of West Palm Beach ("Ambulance Bill").

18. Ms. Morillo has absolutely nothing to do with the Ambulance Bill and is not liable for the payment of same.

19. At some unknown time in the past, the City of West Palm Beach retained Commercial Acceptance for the purpose of collecting the Ambulance Bill.

20. Instead of communicating directly with Mr. Morillo, Commercial Acceptance began a practice of communicating directly and repeatedly with Ms. Morillo in an attempt to collect the Ambulance Bill.

21. On September 1, 2021, at approximately 8:14 a.m., a collector employed by Commercial Acceptance called the cell phone of Ms. Morillo in an attempt to engage Ms. Morillo in conversation concerning the Ambulance Bill.

22. In the conversation with Ms. Morillo, the collection agent of Commercial Acceptance informed Ms. Morillo that the collector was calling with respect to a "debt" owed by her brother.

23. Ms. Morillo informed the caller that she was at work and instructed the caller to not call her again.

24. The caller did not listen to Ms. Morillo.

25. The collection agent called Ms. Morillo again at 1:30 pm.

26. Ms. Morillo told the collection agent emphatically and clearly that he should not call her ever again.

27. Notwithstanding the instruction by Ms. Morillo to the collector not to call her again, the collectors of Commercial Acceptance called Ms. Morillo repeatedly on the following dates and times:

| **Date** | **Time** |
| --- | --- |
| September 2, 2021 | 3:00 p.m. |
| September 3, 2021 | 11:00 a.m. |
| September 7, 2021 | 8:00 a.m. |
| September 15, 2021 | 8:30 a.m. |

28. In each of the telephone calls Ms. Morillo informed the collector not to call her again as the Ambulance Bill was not owed by her.

29. Each of the telephone calls to Ms. Morillo caused Ms. Morillo to become agitated and upset as the calls were made to Ms. Morillo while she was at work.

30. Each of the telephone calls to Ms. Morillo caused Ms. Morillo to experience an increase in her pulse rate as she was forced to engage with a collector in a phone call about her brother's Ambulance Bill.

## COUNT I - ACTION FOR VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692 *ET SEQ.*)

31. This is action for violation of 15 U.S.C. §1692, *et seq.*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA")

32. Ms. Morillo realleges and reaffirms the allegations contained in Paragraphs 1 through 30 above as if set forth hereat in full.

33. At all times material hereto, Ms. Morillo was a "person" with standing pursuant to 15 U.S.C. §1692k.

34. At all times material hereto, the Ambulance Bill was a "debt" as said term is defined under 15 U.S.C. §1692a (5)

35. At all times material hereto, Commercial Acceptance was a "debt collector" as said term is defined under 15 U.S.C. §1692a (6).

36. As more particularly described above, Commercial Acceptance has violated the FDCPA in that Commercial Acceptance has:

(a). communicated in connection with debt collection with third parties in contravention of 15 U.S.C. §1692b and c(b);

  (b). engaged in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in contravention of 15 U.S.C. §1692d;

  (c). caused a telephone to ring repeatedly or constantly with the intent to annoy, abuse or harass any person at the called number in contravention of 15 U.S.C. §1692d (5); and

  (d) used unfair and unconscionable means to collect or attempt to collect a debt in contravention of 15 U.S.C. §1692f.

37. As a direct and proximate result of the violation of the FDCPA by Defendants, Ms. Morillo has been damaged. The damages of Ms. Morillo include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation, and embarrassment.

38. Pursuant to 15 U.S.C. 1692k, Ms. Morillo is entitled to recover actual damages together with statutory damages of $1,000.00, along with court costs and reasonable attorney's fees.

39. Ms. Morillo has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Monica Morillo, an individual, demands judgment against Defendant, Commercial Acceptance Company, a Pennsylvania corporation, for compensatory and statutory damages, together with interest, costs, and attorney's fees pursuant to 15 U.S.C. §1692k, and for such other and further relief as justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Monica Morillo, pursuant to Rule 38, Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

>                                    */s/ Robert W. Murphy*
>                                    ROBERT W. MURPHY
>                                    Florida Bar No. 717223
>                                    440 Premier Circle, Suite 240
>                                    Charlottesville, VA 22901
>                                    T: (434) 328-3100
>                                    F: (434) 328-3101
>                                    rwmurphy@lawfirmmurphy.com
>                                    *Counsel for Plaintiff*